# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PERSONNEL STAFFING GROUP, LLC, a Florida limited liability company, | ) ) ) | |
| *Plaintiff,* | ) ) | 17-CV-2948 |
| v. | ) ) | Thomas M. Durkin |
| FLEET STAFF INC., a Michigan corporation, and RON HEINEMAN, an individual, | ) ) ) ) | |
| *Defendants.* | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Personnel Staffing Group, LLC ("PSG") has filed this diversity action against Defendants Fleet Staff Inc. ("Fleet Staff") and Ron Heineman. Heineman is the President, CEO, and sole Director of Fleet Staff.[1] Presently before the Court is a motion to dismiss for lack of personal jurisdiction filed by Heineman. For the reasons that follow, Heineman's motion is denied.

### STANDARD OF REVIEW

A challenge to a court's exercise of personal jurisdiction over a defendant is made under Federal Rule of Civil Procedure 12(b)(2). PSG, as the party asserting personal jurisdiction over Heineman, "bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Where, as here, the Court "rules on a defendant's

---

[1] Heineman's relationship to Fleet Staff is shown on corporate records on file with the Secretary of State in Illinois and in Kentucky, which PSG attaches to its brief in opposition to Heineman's motion to dismiss.

motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, . . . the plaintiff need only make out a prima facie case of personal jurisdiction." *Id.* (internal quotation marks and citation omitted). "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Id.* (citations omitted); *see also RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir. 1997) (stating that the plaintiff "is entitled to have any conflicts in the affidavits resolved in its favor").

Because this is a diversity case, the Court looks to Illinois's long-arm statute to determine whether it may exercise personal jurisdiction over Heineman. *See Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015) ("District courts exercising diversity jurisdiction apply the personal jurisdiction rules of the state in which they are located."). That statute provides that the outer boundary of the personal jurisdiction of an Illinois court is set by the Illinois Constitution and the Constitution of the United States. *See* 735 Ill. Stat. Ann. 5/2-209(c). The Seventh Circuit has found that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002). Accordingly, the personal jurisdiction analysis is reduced to the question of whether the exercise of personal jurisdiction is contrary to the United States Constitution. *Id.*

Under the Due Process Clause, a court may exercise personal jurisdiction over an out-of-state defendant when that defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). "'The defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). While there are two branches of personal jurisdiction theory—general and specific, *Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014)—only the latter is before the Court on the present motion.[2] For a court to exercise specific jurisdiction, the lawsuit must "result[ ] from alleged injuries that 'arise out of or relate to'" the defendant's contacts with the forum. *Burger King*, 471 U.S. at 472-73 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

## BACKGROUND

The Court finds that the following facts are uncontested for purposes of Heineman's motion.

In Spring 2016, PSG, a Florida limited liability company whose sole member is a citizen of Illinois, was approached by its broker, who stated that the broker for

---

[2] For reasons that will become apparent shortly, the Court need not address PSG's argument that, if the Court does not find specific jurisdiction over Heineman, it should allow jurisdictional discovery to determine whether facts supporting general jurisdiction exist.

3

Fleet Staff, a Michigan corporation with its principal place of business in Kentucky, had inquired about potentially entering into a business relationship with PSG. R. 19-1 (¶ 3); R. 1 (¶¶ 1-3). Representatives of PSG offered to travel to Kentucky, where Heineman apparently is located,[3] to discuss potentially developing a business relationship; however, Heineman insisted that he would travel to Chicago and visit PSG's headquarters in Deerfield, Illinois. On June 3, 2016, Heineman attended a meeting at PSG's headquarters, and at this meeting the parties negotiated the essential terms of the Managed Services Agreement ("MSA I") between PSG and Fleet Staff, pursuant to which Fleet Staff was to provide services to PSG in Illinois. The MSA I was signed by Darron Grottolo on behalf of PSG on June 1, 2016, and by Heineman, as CEO for Fleet Staff, on June 16, 2016. R. 24-1 at 21.

On September 8, 2016, a second meeting took place between Heineman and PSG at PSG's headquarters in Deerfield, Illinois. At some point (unspecified in the record but presumably between June 16, 2016 and September 26, 2016), PSG requested that Heineman execute a personal guaranty of Fleet Staff's contractual

---

[3] The complaint alleges upon information and belief that Heineman is a citizen of Kentucky. Heineman has not yet filed an answer in the case and Fleet Staff's answer to that allegation denies it. R. 12 (¶ 4). Absent from either of the two declarations Heineman submitted in support of his motion to dismiss is any statement as to the State in which he resides or of which he claims citizenship. Heineman does state, however, that he executed his personal guaranty in Covington, Kentucky. R. 13 (¶ 12). PSG's allegation that Heineman is a citizen of Kentucky is supported by a reasonable inference from what little evidence there currently is in the record on the question (Fleet Staff's principal place of business together with Heineman's relationship to Fleet Staff and the place where he executed his guaranty). Despite the opportunity to do so, Heineman has not submitted any evidence to rebut PSG's allegation of citizenship. Therefore the Court will assume that allegation is true for purposes of Heineman's motion to dismiss.

payment obligations to PSG. Heineman claims there were no negotiations with respect to the guaranty, and, specifically, that the guaranty was never discussed at any of the meetings in Illinois. Instead, according to Heineman, PSG simply "demanded" he execute the guaranty "in order for [PSG's] relationship with Fleet Staff to continue," and Heineman agreed. R. 13 at 10 (¶ 10). Neither party provides any information as to when, where, or how this "demand" or Heineman's agreement thereto were communicated. All that is known at this point is that, as a result of PSG's demand, Heineman executed a second version of the Managed Services Agreement ("MSA II"), which contains the following provision not found in the original MSA I:

> **5.5 Guaranty of Performance of Obligations**. Agency agrees and understands that this Agreement is conditioned upon the execution of a Personal Guaranty by an authorized representative of Agency attached to this Agreement as Addendum B.

R. 19-5 at 11.

The MSA II contains a choice of law provision and forum selection clause designating Illinois as the governing law and the courts located in the City of Chicago, County of Cook, Illinois as the venue for "[a]ny action related to or arising from" the MSA II. *Id.* at 18. Heineman's guaranty (Addendum B), on the other hand, contains no forum selection provision. It does, however, contain a choice of law provision. That provision states that the guaranty "is and shall be deemed to be a contract entered into and pursuant to the laws of the State of California." *Id.* at 23. The parties do not address what connection if any there is between any of the

parties or their contractual relationship and California. Heineman executed the MSA II and his guaranty on the same date—September 27, 2016. *Id.* at 20, 23.

**DISCUSSION**

PSG makes two independent arguments for why the Court can assert personal jurisdiction over Heineman: (1) Heineman consented to personal jurisdiction in Illinois by virtue of the forum selection clause in the MSA II; and (2) Heineman's contacts with Illinois satisfy the requirements of constitutional due process.

### A. FORUM SELECTION CLAUSE IN THE MSA II

PSG argues that the forum selection clause in the MSA II—which designates Illinois as the forum for disputes arising under that agreement—also applies to disputes arising under Heineman's guaranty either because the guaranty is incorporated into the MSA II by virtue of § 5.5 of the MSA II or because the guaranty was executed as part of the same transaction. Heineman argues that the guaranty is a separate contract from the MSA II to which incorporation or the same transaction rule does not apply. The Court finds the question of whether Heineman is contractually bound by the choice of forum clause in the MSA II to be a close one.

In *United Airlines, Inc. v. ALG, Inc.*, 873 F. Supp. 147, 151 (N.D. Ill. 1995), the plaintiff argued that the defendant-guarantors were bound by a forum selection clause in a sublease they did not sign because of their acknowledgement in a separate document that they had guaranteed the lessor's performance under the sublease. The court agreed, holding that the guarantor's "unconditional guarantee

6

of [the lessor's] performance under the Sublease obligated it to abide by all of the terms of the Sublease, including the commitment to adjudicate any disputes arising out of it in Illinois." *Id.* (citing *Ameritrust Co. Nat'l Ass'n v. Chanslor*, 803 F. Supp. 893, 895-96 (S.D.N.Y. 1992) (holding that because the trustee had promised to guarantee "the full payment, performance, and observation . . . of all agreements" executed by the trust, the trustee had assumed the trust's obligation to litigate in New York, thereby waiving any objection to personal jurisdiction); *Lemme v. Wine of Japan Import, Inc.*, 631 F. Supp. 456, 461 (E.D.N.Y. 1986) (holding that a guarantor who had agreed to assume every obligation under the contract in dispute necessarily agreed to abide by the consent to jurisdiction clause contained in the agreement, despite the absence of a forum selection clause in the guaranty)).

In *Jetstream of Houston, Inc. v. Aqua Pro Inc.*, 2010 WL 669458 (N.D. Ill. Feb. 22, 2010), the court distinguished *United Airlines* and the cases cited therein because "(1) the guarantor in *United* unconditionally guaranteed performance of all contractual obligations, whereas the [guarantor before the *Jetstream* court] guaranteed only 'full and prompt payment of the Liabilities'; and (2) unlike the guarantee in *United*, the Guarantees [in *Jetstream*] contained a choice of law provision but failed to mention venue or jurisdiction." *Id.* at *4.

This case falls somewhere in between *United Airlines* and *Jetstream*. Although not entirely clear, the language of the guaranty Heineman signed appears to be closer to an unconditional guaranty of performance of all contractual obligations like the guaranty in *United Airlines,* than the more limited guaranty of

7

payment at issue in *Jetstream*. *See* R. 19-5 at 22 ("Guarantor hereby irremovably and unconditionally guarantees the full and timely payment of performance when due of Agency under the Managed Services Agreement, . . . *in accordance with the terms of the Managed Services Agreement*. In furtherance, and not in limitation of the foregoing, if Agency fails to pay *or perform any Obligation*, Guarantor shall pay to or perform for the benefit of PSG the amount *or performance due* in the same currency *and manner* and at the times provided for in the Managed Services Agreement.") (emphasis added); *see also id.* at 11 (§ 5.5) (referring to a "[g]uaranty of [*p*]*erformance* of *obligations*") (emphasis added). On the other hand, like the guaranty at issue in *Jetstream,* the guaranty here contains a choice of law provision but not a forum selection clause. And, as the *Jetstream* court reasoned, "[b]y including the same choice of law provision from the Notes, albeit with slightly different language, but omitting the venue and jurisdiction provisions, the natural conclusion is that the parties distinguished the enforcement procedure under the Notes from the enforcement procedure under the Guarantees." 2010 WL 669458, at *4.

On balance, the Court would conclude that the language of Heineman's guaranty relating to all obligations of Fleet Staff outweighs the fact that Heineman's guaranty includes a choice of law provision but not a forum selection clause,[4] particularly given that it remains to be seen whether there is a rational

---

[4] Contrary to Heineman's suggestion, the fact that the guaranty and the underlying contractual relationship were not initiated at precisely the same time does not preclude a finding that they were entered into as part of the same transaction.

8

explanation for the choice of law provision in the guaranty selecting California as the applicable law.[5] Nevertheless, the Court need not rely on the forum selection clause in the MSA II to find personal jurisdiction over Heineman, because, as discussed in the next section, the Court concludes that Heineman's contacts with Illinois with respect to his guaranty obligation satisfy the minimum contacts inquiry.

B. **MINIMUM CONTACTS**

Heineman argues that the Court's assertion of personal jurisdiction over him would violate his due process rights because he is a non-resident[6] with no connections to Illinois: he is not a party to the MSA II, which is the underlying

---

Moreover, as a factual matter, the MSA II *was* signed simultaneously with the guaranty. The Court also rejects Heineman's argument based on the fact that the guaranty is not incorporated into the MSA II. The issue is not simply a matter of incorporation but whether the guaranty should be interpreted to include an obligation on the part of the guarantor arising out of the contract establishing the debt that the guarantor agreed to guarantee. *See BioVeris Corp. v. Wohlstadter,* 69 F. Supp. 3d 574, 579 (W.D. Va. 2014) ("Although the agreements bear the same date and '[r]eference is made' in the guaranty agreement to the Vaccines Asset Transfer Agreement, the remaining circumstances clearly establish that the guaranty agreement is a related, but independent, stand-alone contract, such that the forum-selection clause in the asset transfer agreement does not extend to the guaranty agreement.") (internal citation omitted).

[5] *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(a) (1971) ("[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . *unless* . . . the chosen state *has no substantial relationship* to the parties or the transaction and there is *no other reasonable basis* for the parties' choice") (emphasis added).

[6] Heineman repeatedly emphasizes his lack of contacts with Illinois, including the fact that he does not and never has resided here. As previously mentioned, however, he neglects to say where he does reside, and the Court has assumed, for purposes of this motion, that he resides in Kentucky.

9

contract that he guaranteed; his guaranty was not negotiated in Illinois because it was not negotiated, period; and his performance under the guaranty occurs from wherever he is located at the time, which would be outside of Illinois, presumably in Kentucky or somewhere else from where he conducts business. The Court finds these arguments unpersuasive.

Contracts with a connection to a particular forum may supply sufficient minimum contacts for a court to exercise personal jurisdiction in that forum. *See Burger King Corp.*, 471 U.S. at 474-76. The personal jurisdiction question in this case thus boils down to whether Heineman's guaranty bears a sufficient relationship with Illinois for this Court to exercise personal jurisdiction over Heineman. It is not sufficient by itself that Heineman entered into a contract (the guaranty) with a party (PSG) located in Illinois. *See Hyatt Int'l Corp.,* 302 F.3d at 716 (citing *Burger King,* 471 U.S. at 478). Instead, courts examine "prior negotiations, contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine if the defendant has "purposefully availed" itself of conducting business in the forum. *Id.* (internal quotation marks and citation omitted).

Heineman's argument that he lacks minimum contacts with Illinois depends on his assertion that the Court can *only* look at facts related to the negotiation, execution, and performance of his *guaranty* in deciding the minimum contacts issue. But the court in *First National Bank of Chicago v. Boelcskevy*, 466 N.E.2d 1182, 1186 (Ill. App. 1984), rejected an argument similar to Heineman's here "that facts

not directly related to the guaranty were irrelevant." Instead, the *Boelcskevy* court held that the transaction by which the guarantor entered into the guaranty "is not limited, legally or logically, to the guaranty." *Id.* at 1185. The court examined the underlying transaction that led to the guaranty and concluded that it "was so related to the guaranty that [the] defendant's . . . execution of [the] personal guaranty . . . constituted 'transaction of any business' within Illinois, despite the fact that the guaranty was signed in Florida." *Id.* at 1186-87. Further, the court held, the defendant "had far more contact with Illinois than the minimum required for due process" because, among other things, the guaranty was "to be performed in Illinois . . .[;] [t]he debt which is secured by the guaranty required disbursement of funds from an Illinois lending institution to an Illinois business operation[;] and both acquisition and financing of that business were negotiated in part in Illinois." *Id.* at 1187.

In support of his contrary position, Heineman cites to *Heritage Vintage Investments, LLC v. KMO Development Group, Inc.*, 2015 WL 12838162 (N.D. Ill. Dec. 11, 2015), which distinguished *Boelcskevy* on its facts. The *Heritage* court quoted the Seventh Circuit to the effect that "it is only 'the dealings *between the parties in regard to the disputed contract* that are relevant' to the analysis, not *all* contracts between the parties." *Id.* at *4 (quoting *RAR, Inc.*, 107 F.3d at 1278 (emphasis in original)). But the quoted statement from *RAR* did not have in mind the guaranty situation at issue in *Heritage* and in this case. Instead, the Seventh Circuit made the statement in reference to the requirement that the claim at issue

11

must arise out of the minimum contacts for those contacts to be relevant to the specific jurisdictional inquiry. 107 F.3d at 1278 (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996) (noting that specific jurisdiction "contemplates dealings *between the parties in regard to the disputed contract*, not dealings unrelated to the cause of action" (emphasis in original)). Both *RAR* and *Vetrotex* involved an ongoing commercial relationship giving rise to multiple contracts between the same parties entered into over time. In that context, both cases distinguish contacts related to the disputed contract from contacts *unrelated* to the disputed contracts. It was in that situation that the Seventh Circuit drew the line of counting only "dealings between the parties in regard to the disputed contract." *Id.* And even that line, the court said, "will not always be a bright one" because

> [r]eal world commercial interactions are rarely neatly-compartmentalized by particular contract. When parties engage in an ongoing commercial relationship involving repeated transactions over time, it may be difficult to say exactly which past dealings regard a specific contract. *The same negotiations, dealings, or other interactions could have some connection to a number of contracts between the parties.* To be relevant for personal jurisdiction, however, past contacts involving the forum state should *either bear on the substantive legal dispute between the parties or inform the court regarding the economic substance of the contract.*

*Id.* (emphasis added).

This case deals with contacts which, although not specifically involving the disputed contract, nevertheless *are* related to it because those contacts arise out of another contract that is entered into essentially simultaneously and as part of the

12

same transaction as the disputed contract. And applying the test articulated in *RAR* and *Vetrotex* to this situation leads to the conclusion that a guarantor's contacts with the forum in connection with the related, underlying contract between the plaintiff and the debtor-principal "bear on the same substantive legal dispute between the parties" over the guaranty, *and* that those contacts "inform the court regarding the economic substance of the" guaranty. *See Boelcskevy*, 466 N.E.2d at 1186-87 ("We do not hold that facts unrelated to defendant's guaranty may be used to subject him to jurisdiction; rather we hold that the transaction underlying the guaranty was so related to the guaranty that defendant's acts with respect to such transaction can be said to have 'given rise' to the cause of action.").

As a result, this Court disagrees with *Heritage*'s quotation of *RAR* to the extent that it is taken as support for the argument that examination of the underlying transaction is *precluded* in determining whether a court has specific jurisdiction over a guarantor of the underlying transaction. In fact, the *Heritage* court apparently would agree that such an examination is not precluded, as a later opinion in the same case ultimately finding personal jurisdiction over the guarantor relied on, among other things, the guarantor's contacts with the forum in connection with the underlying contract that the defendant guaranteed. *See Heritage Vintage Invs., LLC v. KMO Dev. Grp., Inc.*, 2016 WL 6217087, at *7 (N.D. Ill. Oct. 24, 2016) ("Though the guaranty is itself silent as to choice of law and location of performance, the guaranty and the note here 'were part of an interrelated package dedicated to one overarching goal.' . . . Because the note and the loan are closely

linked, the note's Illinois connections must be considered in the jurisdictional analysis.") (quoting *RAR, Inc.*, 107 F.3d at 1279).

In numerous cases involving personal jurisdiction over a guarantor, courts have relied at least in part on the underlying contract (usually a loan document) to establish personal jurisdiction over a guarantor. For example, the Ninth Circuit held a New York guarantor subject to California jurisdiction because the underlying contract was negotiated in California and expressly subject to California law. *See Forsythe v. Overmyer*, 576 F.2d 779, 783 (9th Cir. 1978) ("Overmyer, through Fitzsimmons, interjected himself into the transaction by assuming personal liability in the event of default on a contract expressly subject to jurisdiction in the California forum. The guaranty was part of the negotiating strategy in California."). And, the Fifth Circuit upheld the assertion of personal jurisdiction by a Texas court over a Colorado guarantor where the guarantor was a corporate officer, director, and shareholder of a corporation to which the plaintiff had advanced credit. *Marathon Metallic Bldg. Co. v. Mountain Empire Constr. Co.*, 653 F.2d 921, 923 (5th Cir. 1981). The court stated that the effect of the corporate officer's guaranty was to involve the corporate officer "in each such advance of credit over many months and purposefully to cause business activity, foreseeable by [the corporate officer], in the forum state." *Id.* Further, "[t]he general contract pursuant to which this was done, issued and sent a few weeks after the guaranty, specifically stipulated that it would be governed by the laws of Texas." *Id.* The court concluded

that the act of guaranteeing the corporate debt was "purposeful and affirmative action, resulting in, at the least, a minimum contact with Texas." *Id.*

Similarly, in the *Jetstream* case, the defendants "guaranteed multiple secured installment notes in which it was agreed that the Notes were made in Illinois, would be interpreted under Illinois law, and would be litigated in Illinois pursuant to the forum selection clause." 2010 WL 669458, at *6. In addition, "the underlying purpose of the Guarantees was to guarantee payment to Illinois companies in the case of [the contracting party's] default." *Id.* The court found that, "[i]n light of these circumstances, it is clear that [the defendants] purposefully engaged in activities that affected Illinois interests by executing the Guarantees and could 'reasonably anticipate being haled into court' in Illinois as a result." *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297). Moreover, the court noted, it was the defendants' "alleged failure to comply with the Guarantees that gave rise to [the plaintiffs'] claims." *Id.* "As such," the court held, "there [were] sufficient contacts with Illinois for [the] court to exercise specific personal jurisdiction over [the defendants]." *Id.* "And, because the [defendants'] activities directly implicated the financial interests of Illinois companies," the court concluded "it is 'fair, just, and reasonable' to bring the [defendants] under the jurisdiction of Illinois courts, and such jurisdiction 'comport[s] with traditional notions of fair play and substantial justice.'" *Id.* (citations omitted).[7]

---

[7] *See also Citizens Bank v. Parnes*, 376 Fed. App'x 496, 501 (6th Cir. 2010) (unpublished) (holding a New York guarantor subject to personal jurisdiction in Michigan, in part because the underlying loan specified it was executed in Michigan

15

No doubt Heineman would argue that many of the cases cited herein involved some facts not present here. For instance, in some the guaranty provided for the forum's law to be applied; in others, the guaranty was signed in the forum. While the absence of one or more of these elements in this case is a factor that weighs against a finding of personal jurisdiction, the Court must consider the totality of the relevant factors. And the Court finds three factors present in this case to be, on balance, dispositive.

First, Heineman came into Illinois and engaged in negotiations in that forum on behalf of Fleet Staff, a company with which he appears to have a very close connection and financial interest, if not an actual ownership stake in,[8] as President,

---

and governed by Michigan law); *Cont'l Bank, N.A. v. Everett*, 964 F.2d 701, 703 (7th Cir. 1992) ("The loan and guarantees are 'substantially connected with' Illinois—the documents recite that they were delivered and executed in Illinois, the loan was to be repaid in Illinois, and the guarantors agreed that Illinois law would govern. These same considerations show that personal jurisdiction is consistent with the due process clause of the fourteenth amendment.") (citations omitted); *Nat'l Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1138 (6th Cir. 1982) (a Minnesota guarantor was haled into Kentucky court because she signed a guaranty on behalf of defendant beverage company, a Kentucky resident in which the guarantor owned shares); *Aetna Cas. & Surety Co. v. Looney,* 424 N.E.2d 1347, 1350 (Ill. App. 1981) ("The physical act of the signing of the indemnity agreement took place in Oklahoma but it was for the purpose of securing and guaranteeing performance of a contract to be performed in Illinois and governed by Illinois law.").

[8] It is reasonable to infer from the fact that Heineman is President, CEO and sole Director of Fleet Staff that he has a financial stake or interest in that company; why else would he personally guarantee the debts of Fleet Staff? Heineman attempts to refute that logical inference by stating in a sworn declaration attached to his reply that he is not the "owner" of Fleet Staff and that Fleet Staff is instead owned by a Trust. *See* R. 24-1 at 3 (Supp. Decl, ¶ 7). He does not specifically deny, however, that he currently is or at some point in time was a beneficiary of the Trust, stating only that he "was neither grantor, trustee, nor a beneficiary in February 2015." *Id.* (¶ 6). Construing the facts in favor of PSG, as the Court must, the evidence is

16

CEO, and sole Director. *See O'Hare Int'l Bank v. Hampton,* 437 F.2d 1173, 1177 (7th Cir. 1971) ("While the guarantors received no direct consideration, it appears there was inducement in connection with their projected interest in World Travelers for them to want eventual financing of the airplane to be purchased. They should not be in the position, even though indirectly, to enjoy the fruit but to disavow the situs of the tree from which the fruit was derived."); *LaSalle Nat'l Bank of Chi. v. Akande*, 600 N.E.2d 1238, 1242 (Ill. App. 1992) ("defendant took advantage of a business opportunity by entering into a guaranty, the performance of which was related entirely to the lease of real estate and the operation of a business located in this State. In short, defendant purposely availed himself of the privilege of conducting activities within Illinois and should reasonably have anticipated that any lawsuit against him would be filed in Illinois, . . . the place where the lease and the guaranty were likely to be performed.").

Second, the MPA II, which Heineman guaranteed, concerns services rendered by Fleet Staff in Illinois, is governed by Illinois law, and requires that all disputes arising under it be brought in an Illinois court. Heineman agreed to these provisions as CEO of Fleet Staff, and then also agreed to personally guaranty Fleet Staff's payment under that agreement. *See United Airlines, Inc.*, 873 F. Supp. at 152 (holding guarantors subject to Illinois personal jurisdiction in part because the underlying lease contained forum selection and choice-of-law clauses favoring Illinois); *M.S. Distrib. Co. v. Web Records, Inc.*, 2000 WL 1898507, at *2-3 (N.D. Ill.

---

sufficient to show that Heineman likely has a personal financial stake in Fleet Staff.

Dec. 21, 2000) (guarantor negotiated agreement in Illinois, agreement contained Illinois choice of law clause).

And third, performance of his guaranty obligations requires Heineman to make payment of Fleet Staff's monetary obligations to PSG in Illinois. Performance of his obligations under the guaranty therefore takes place in Illinois, where the money is received, not, as Heineman argues, in the place where he is located when the money is sent. *See Fountain Mktg. Grp., Inc. v. Franklin Progressive Res., Inc.*, 1996 WL 406633, at *5 (N.D. Ill. July 16, 1996) ("The guaranty required Franklin to pay Fountain for any debts Progressive failed to honor. The guaranty therefore required performance in Illinois. Illinois is where Fountain resides, and where Progressive sent its payments to Fountain. As a result, the guaranty supports personal jurisdiction over Franklin based on primary performance in Illinois.").

These factors outweigh the fact that the guaranty was signed by Heineman outside of Illinois and that the guaranty provides for application for some unknown reason of California law.

## Conclusion

For the foregoing reasons, Defendant Ron Heineman's Motion to Dismiss, R. 13, is denied.

ENTERED:

*Thomas M. Durkin*
Thomas M. Durkin
United States District Judge

Dated: October 30, 2017